Your Honor, I think we would have to look at his overall record in short. Mr. Kham grew up in Cambodia. His family was evacuated by the U.S. in the mid-70s on account of their persecution by the Khmer Rouge. He was fighting in the military at the time, so he did not leave. As the Khmer Rouge took power, Mr. Sompkham was arrested and put in jail. Mr. Sompkham was put in a re-education camp by the Khmer Rouge for approximately four years. As a result of that, when he left, he was able to get a job in the government, but as he was working in the government, he found out that he was demoted and he heard of threats that were being made out to him. And because the threats were being made out to him because of his experience in Cambodia, he was scared and he did not want to see these threats being carried out. I guess the basic argument is he didn't want to wait to see if the threats were real. Exactly what threats are we talking about? Yes, exactly. Well, these are all things that were to happen in the future, so they may be the basis to argue a well-founded fear of future persecution, but I don't really hear anything that supports the contention he has already made. Yes, Your Honor. The only other issue was Mr. Kham had a neighbor that moved into next door who was a general. He was actually the chief of staff of the rival political party. This general made various threats to Mr. Kham, and most notably, he boarded up all the windows and he said, you know, I'm not going to let you in. He placed guards around his house, and I know the government points this out, and the immigration judge pointed out that that is a reasonable thing for a chief of staff to do. I'm somebody who is very important in the country to provide security, which I would agree with, but he did things that I don't think a chief of staff would do, such as put guards outside of Mr. Kham's house, make threats to Mr. Kham, and at times he even had guards placed on top of Mr. Somkham's house, which I don't think was reasonable in light of Mr. Kham's position. Well, that, too, would suggest that something might happen in the future, but it doesn't support an argument that he has actually been persecuted or has been a victim of past persecution. Well, Your Honor, and then that would take me to my second point of, you know, making your point about this possibility for future persecution, and based on, as I said, based on his experience of living in Cambodia, he wasn't willing to take that chance. The immigration judge did not address the Human Rights Report, where it showed shortly after Mr. Kham left, there was various extrajudicial killings that were carried out by the ruling party against members of the party that Mr. Kham was privy to, and so I understand your dilemma, but I believe he just didn't want to take that chance. Well, I guess the issue as it's posed to us now is, except the proposition that he had a subjective concern or a reasonable fear from a subjective basis that his life was in danger. There's also got to be an objective prong that's satisfied, and you've identified, as best as I can see, a rumor that was passed on to him by somebody who was a higher-up in his department. And the action of the chief of staff, or whatever his title was, the higher officer who lived next door, who isolated himself, are there other things that you can point to that would justify or give us cause with regard to the objective prong to overturn the decision of the immigration judge? Your Honor, I cannot. As I said, my point that I just want to make is he feared because the threats were being made, and the only objective thing we have is the Human Rights Reports put up by the State Department that showed that threats such as these that were being made against people were carried out after Mr. Kham left the country. And I would just point out that the immigration judge, in addition to not discussing the country reports whatsoever, she also characterized, she distorted the records in other matters. She said that Mr. Kham was only detained by the Khmer Rouge for a week, and then released, and he was actually, Mr. Kham was very cognizant of how long he was being detained, and that when asked how long he was detained by the Khmer Rouge, he said it was three years, eight months, and 20 days. Additionally, she said that he was passing information to the Khmer Rouge, which is just something she didn't pay close attention to. Thank you again. Mr. Payne. It appears to me that the immigration judge made at least one error of law in appearing to require corroborating evidence as a sine qua non for granting asylum. And I take it your position is that that doesn't really matter, because even if we take his testimony as completely credible, and knowing that it does not require corroboration, there isn't enough. Is that a fair summary of your position? Yes, Your Honor. In addition, the government submits that the corroboration finding was not towards Mr. Kham's credibility. Essentially, the immigration judge was saying Mr. Kham testified credibly that he received this rumor. He heard a rumor that he would be killed. But that alone is not sufficient to meet his burden. A rumor alone is not sufficient to establish past persecution. It's not a threat. It doesn't rise to the level of a threat. So therefore, she was looking in the record for additional evidence. And there is none. It's uncharitable to the opinion, I think, of the immigration judge, in my view. I think it's not a very well-crafted decision. But your point is that it doesn't really matter if the record as a whole still doesn't sustain the showing of past persecution. Yes, Your Honor. This Court's review is substantial evidence of the record, not just of the immigration judge's decision. While there are factual errors, and the Court's identified it in the record, there is no evidence of past persecution. And there is no evidence of a legal error. As a whole, the record supports the finding that Mr. Kham failed to meet his burden of establishing eligibility for asylum. What is your response to counsel's argument about future persecution, that even a threat that had not previously been carried out, that his subjective fear was objectively reasonable in view of the other things that were happening in the country at that time? Well, Mr. Khan's experience in Cambodia and what has happened since does not support a finding of eligibility of a well-founded fear of past persecution. In particular, a rumor alone is not a threat. The record shows that this rumor occurred because Mr. Khan's supervisor, who is a friend, told him that he heard a rumor that Mr. Khan was not able to meet his burden of establishing eligibility for asylum. And that was in 2012. That is not a threat as this court has identified as being sufficient for a finding of past persecution. In addition, there's no showing that even if that is a threat, it occurred on his, on account of his political opinion. In particular, the Country Condition Report from 1996 identifies that Fun Sin Pak and the CPP were in the coalition government at the time that Mr. Khan experienced this rumor. That's on Administrative Record page 188, and Mr. Khan testified to that fact on Administrative Record page 135. So at the time he left, the CPP and Fun Sin Pak were in the coalition government. He also left his wife, who is a member of the CPP, back in Cambodia. She is also a police officer. Presumably, if Mr. Khan, who received a visa to leave the country, who was allowed to depart the country through the airport by the CPP, if he feared persecution, he would have taken his wife also. But he has not done so. He has also not spoken to his wife since he's been in the United States. So while Mr. Khan testifies that he fears persecution if he goes back, he has no direct evidence of that persecution. In addition, when Mr. Khan was transferred to the immigration post, he remained at that post without incident from March 1995 to October 1995. And finally, the 1997 State Department report indicates that the CPP is still in power and Mr. Khan is in power, and Mr. Khan is a member of the CPP. Accordingly, the government submits that the immigration judge correctly found that Mr. Khan did not reach his burden of establishing eligibility for asylum, and that substantial evidence supports the final administrative decision. Thank you. Thank you, counsel. Mr. Ojeda, you have a couple of minutes left. Thank you, Your Honor. I would only make two points that still are contention that his subjective belief is supported by objective evidence in that people were persecuted after he left that were in similar position. The government makes the argument that Mr. Khan was a member of the CPP, and I believe Mr. Khan does acknowledge that membership. The problem was that it was imputed to him that he was a member of Fun-Sin-Pek when his friend that came to visit him, and it was just a social visit, led to the belief that this official in the Fun-Sin-Pek was being funneled information from Mr. Khan. The imputed political opinion has been accepted in the circuit, and although I would think Mr. Khan, if anything, is neutral with regards to the political situation, they do believe that he was a member of the Fun-Sin-Pek. I have no other information, Your Honor. Thank you, counsel. Thank you. The case just argued is submitted, and we will turn next to harm versus partner insurance.
judges: Graber, Tallman, Brewster